UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | 21-cv-5429 (AS) |
| -against- | |
| OFER ABARBANEL et al., | OPINION AND ORDER |
| Defendants. | |

ARUN SUBRAMANIAN, United States District Judge:

The Securities and Exchange Commission (SEC) accuses defendant Ofer Abarbanel and his co-defendants Victor Chilelli and New York Alaska ETF Management LLC of concocting a scheme to defraud investors. *See* Dkt. 77 ¶ 1. The SEC says Abarbanel abused his position as an investment adviser to solicit investor deposits and then misappropriated those funds. *See id.* ¶ 16. The SEC's complaint alleges the violation of a raft of securities laws and seeks remedies including an injunction barring Abarbanel from "directly or indirectly, participating in the issuance, purchase, offer, or sale of any security, including, but not limited to, through any entity owned or controlled by" him, except when purchasing or selling securities from his personal account. Dkt. 77 at 60.[1]

After answering the SEC's complaint, but before the close of discovery, Abarbanel moved for partial judgment on the pleadings. Dkt. 135. Abarbanel claims that the Court lacks either the statutory authority or equitable jurisdiction to impose the SEC's requested injunction. *See* Dkt. 136. For the reasons set forward below, Abarbanel's motion is DENIED.

## LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c)

---

[1] The alleged conduct also gave rise to parallel criminal charges against Abarbanel. *See* Complaint ¶¶ 1–2, *United States v. Abarbanel*, 1:21-mj-06425-UA (S.D.N.Y. June 23, 2021), Dkt. 1. Abarbanel pled guilty to one count of investment adviser fraud, *see* Order, *United States v. Abarbanel*, 21-cr-532-LAK (S.D.N.Y. Mar. 1, 2023), Dkt. 66, was sentenced to a term of 48 months' imprisonment, and was ordered to pay $106 million as restitution. *See* Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, *United States v. Abarbanel*, 21-cr-532-LAK (S.D.N.Y. May 17, 2023), Dkt. 72; Judgment, *United States v. Abarbanel*, 21-cr-532-LAK (S.D.N.Y. May 23, 2023), Dkt. 75.

motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

## DISCUSSION

Abarbanel's motion isn't cognizable as one for judgment on the pleadings. Abarbanel doesn't argue that he is entitled to judgment on any of the SEC's claims. *See* Dkt. 136 at 7. Instead, he challenges just one form of the SEC's sought-after relief—namely, the SEC's request that Abarbanel be permanently enjoined from "directly or indirectly, participating in the issuance, purchase, offer, or sale of any security, including, but not limited to, through any entity owned or controlled by" him (save for on his personal account). Dkt. 77 at 60. Abarbanel styles his motion as one for "partial judgment on the pleadings," in line with his application's limited scope. *See* Dkt. 136 at 2, 5, 6, 7, 13, 15, 16.

While courts have applied Rule 12(c) to distinct causes of action, they've generally refused to manicure claims for relief or adjudicate portions of claims under the rule. *See JPMorgan Chase Bank, N.A. v. Tesla, Inc.*, 2024 WL 4167340, at *12 (S.D.N.Y. Sept. 12, 2024). "The rule's text does not explicitly authorize courts to carve up claims or defenses on a motion for judgment on the pleadings." *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 894 (N.D. Ill. 2018). This limitation reflects "[t]he historic rule in the federal courts" that "has always prohibited piecemeal disposal of litigation." Fed. Rul. Civ. P. 54 advisory committee's notes to 1946 amendment.

Granting Abarbanel's motion wouldn't result in a judgment of any kind or resolve any of the SEC's causes of action. Abarbanel asks the Court to "strike the SEC's request for a permanent 'conduct' injunction from the amended complaint." Dkt. 136 at 16; *see also* Dkt. 138 at 14. If the Court were to do that, this case would still proceed—Abarbanel doesn't contest the sufficiency of the SEC's pleadings on liability or its other requested forms of relief. *See* Dkt. 136 at 7; *see also Doe v. Regents of the Univ. of Cal.*, 2023 WL 6194148, at *2–3 (C.D. Cal. Aug. 11, 2023) (denying motion for judgment on the pleadings as to the availability of specific remedy).

Of course, labels aren't everything—even if Abarbanel's motion fails as one for judgment on the pleadings, the Court can construe it as a motion to strike. *See Meisels v. Meisels*, 2021 WL 1924186, at *7 (E.D.N.Y. May 13, 2021) (construing motion for judgment on the pleadings as motion to strike); 10A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2713 (4th ed. 2025) ("In view of the purpose of the rules to secure the just, speedy, and inexpensive determination of every action, the courts naturally are reluctant to refrain from properly disposing of a motion merely because its form is incorrect.").

Unfortunately, framing Abarbanel's motion as one to strike does little for its chances of success. "Motions to strike are viewed with disfavor and infrequently granted." *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 607 (S.D.N.Y. 2025) (citation omitted); *see also Lipsky*

*v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing."). Abarbanel hasn't given the Court a strong reason to strike the SEC's requested relief. He's shown neither any prejudice from the SEC's requested injunction staying in nor any practical benefit to pruning it. *See Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, 2008 WL 4179235, at *4 (S.D.N.Y. Sept. 10, 2008) (denying motion to strike where "no prejudice to the Defendant will result from allowing the prayer for relief to stand"); *SEC v. Collector's Coffee Inc.*, 2021 WL 1956369, at *9 (S.D.N.Y. May 17, 2021) (same).

Abarbanel's arguments on the merits further underscore that his motion comes too soon. Abarbanel first argues that the SEC's requested injunction falls outside what the federal securities law authorize. That question, however, is one that turns on factual showings the SEC must make— in other words, facts and circumstances still undecided at this stage of litigation. *See* 15 U.S.C. §77t(b) (injunction may issue only "upon a proper showing"); 15 U.S.C. §78u(d)(1) (same); 15 U.S.C. §80b-9 (injunction may issue only "upon a showing"); 15 U.S.C. §80a-41 (same). Our law has long recognized that equitable remedies like injunctions involve fact-intensive inquiries. *See* JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE: AS ADMINISTERED IN ENGLAND AND AMERICA § 439, at 440 (Rothman & Co., 1988) (1849) ("The beautiful character, or pervading excellence, if one may so say, of Equity Jurisprudence, is, that it varies its adjustments and proportions, so as to meet the very form and pressure of each particular case, in all its complex habitudes."). Doing equity demands attention to the particularities of each case. *See* ARISTOTLE, THE NICOMACHEAN ETHICS 1137b, at 314-15 (H. Rackham trans., Harvard Univ. Press rev. ed. 1934); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case . . . .").

The federal securities laws also permit the SEC to seek, and the Court to "grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). In response, Abarbanel claims that the SEC's requested injunction doesn't sound in equity because the injunction doesn't "address any harmful or unlawful future conduct and is, therefore, clearly punitive." Dkt. 136 at 15. That perceived lack of equity is why Abarbanel says there's no need to wait until the facts are clear. According to Abarbanel, nothing found in the evidentiary record "will . . . change whether or not this Court . . . [has] . . . inherent authority to grant the type of 'conduct' injunction sought by the SEC in this case." Dkt. 138 at 7.

Not so. Whether an injunction is preventative or punitive is, again, is a factbound question. *See SEC v. Gentile*, 939 F.3d 549, 564 (3d Cir. 2019) ("[T]he appropriate scope of an injunction against further lawbreaking depends on the facts and circumstances of each case."); *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011) ("[I]t is most unusual to dismiss a prayer for injunctive relief at this preliminary stage of the litigation, since determining the likelihood of future violations is almost always a fact-specific inquiry."), *rev'd on other grounds*, 568 U.S. 442 (2013); *see also SEC v. Graham*, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016) (declining to review injunction SEC requested

in complaint despite doubts about its permissibility as "it is premature to review the precise nature of the injunction").

That's the case even when an injunction bars a defendant from participating in lawful economic activity. *See SEC v. Posner*, 16 F.3d 520, 521–22 (2d Cir. 1994) (upholding injunction barring defendants from serving as officers or directors of any public company as "within the court's well-established equitable power" based on district court's findings); *see also SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (similar); *SEC v. Gault*, 751 F. App'x 974, 980 (9th Cir. 2018) (similar); *FTC v. Shkreli*, 2024 WL 1026010, at *2 (2d Cir. Jan. 23, 2024) (upholding injunction imposing lifetime ban from pharmaceutical industry on defendant); Dkt. 137 at 16–17, 17 n. 3 (listing injunctions limiting defendants from participating in lawful economic activity entered by district courts across the country).

Abarbanel says the Supreme Court's decision in *Liu v. SEC*, 591 U.S. 71 (2020), casts *Posner* into doubt because the *Posner* court didn't specifically ask whether "such an [injunction] could be issued by Chancery Court in England as of the adoption of the United States Constitution in 1789." Dkt. 138 at 10. But *Liu* wasn't about injunctions. *Liu* held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu*, 591 U.S. at 74–75.

To the extent that Abarbanel claims that *Liu* ushered in a new analysis for the bounds of the court's equitable power—it didn't. Equitable jurisdiction has been tied to chancery's limits for the better part of our country's history. Just under two centuries ago, Justice Story observed that "the settled doctrine of this court is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in [England], as contradistinguished from that of courts of law." *Boyle v. Zacharie*, 31 U.S. 648, 658 (1832); *see also Atlas Life Ins. Co. v. W. I. S., Inc.*, 306 U.S. 563, 568 (1939) ("The 'jurisdiction' thus conferred on the federal courts [by the Judiciary Act of 1789] to entertain suits in equity is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries."). Against that longstanding tradition, neither the Supreme Court nor the Second Circuit has instituted the magic-words requirement Abarbanel now claims to exist. Not even *Liu* asks Abarbanel's question, instead mentioning chancery only once in passing. *See Liu*, 591 U.S. at 92. *Posner* (and *First Pacific Bancorp* and *Gault*) remain good law.

## CONCLUSION

For the above reasons, Abarbanel's motion is DENIED. The Clerk of Court is directed to terminate Dkt. 135.

SO ORDERED.

Dated: July 10, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge